5-18-0290 Motion for leave aside additional authority was filed in this case yesterday, March 26, 2019. That motion is denied. So are council ready to proceed with arguments? Good morning. I am Brad Elwood and I am here on behalf of Marshall Browning Hospital Association. I am joined today at council's table by co-dependent Dr. Alexandria Rice. I am going to be making all the arguments today. We are asking the court to transfer this case to Perry County on the grounds of form 9 convenes. I know the court is very experienced in form 9 convenes law and I think council and ourselves have presented the general law fairly well as far as what the factors are to be considered. So I'd like to just jump right into discussions and the analysis as far as why we think the transfer is appropriate. You didn't file a bystander's report, did you? No, we did not. Did you file a transcript of the hearing? There was no hearing, Your Honor. So Judge Salverson just entered a denied order. So you want to talk about the factors. How are we supposed to know what she did? Well, that's a good point, Your Honor, because there is no record to show what balancing the factors that she did. And I think in this case, I think that strongly shows that there was an abuse of discretion in this case because how do we know what the court did in considering and weighing the various factors? Do you want it remanded? No, we think this court has the authority under Supreme Court Rule 366A5 to enter that order itself and to transfer. And I would point out that this court clearly has done that in a case that I wrote where we analyzed a case where the judge did just that. Yes. So you're going to argue the factors. Yes. But my concern is, are you going to argue differently than you argued before the trial court? Well, I believe our arguments are consistent with our written pleadings below. And that's what our arguments are going to be based on is our brief understanding that the arguments weren't made below because we didn't have a hearing. Well, my concern is the only evidence you filed or the only attachments, if you will, seem to be exhibits related to court statistics, right? That's one. That's one. That's correct. Which informed nonconvenience cases now have been given very little weight, correct? I think the congestion is a factor. I didn't say it wasn't a factor. I said the courts now are giving it very little weight. I think it has reduced weight in comparison to some of the other factors. But, again, we look at all the factors. And whether we say the congestion has significant weight or little weight, the fact remains in this case that the congestion does favor parent accounting. And I think that is true. How greatly does it favor parent accounting? The factors that we cited, I think we showed the ability to go to trial quicker. And I think we also showed the statistics that showed that fewer cases were on the dock. The actual numbers, I don't recall, but they are cited in our brief of the discussion of the congestion issue, I believe. But that has nothing to do necessarily with whether or not a judge can give you a trial date. I mean, there's nothing in the statistics that tell us whether you can get a trial date as quickly as you are ready for one, is there? In some cases, that can be true. I mean, in what you filed, is there anything that tells us how quickly you can get a trial? No. Other than the general records on filing, on how long it takes from the time a case is filed and the average time. In the particular case, no, there's not. And I don't know of any way that we would be able to quantify that factor without a trial judge making that remark on the record and saying, in my county, I can give you a case, give you a trial in X number of days. And we don't have it here, again, because we can't peek into what the court was rationalizing because she didn't offer her opinion. I apologize for interrupting you, but, you know, we've read your briefs, so I have some questions. Sure. Well, that's what this is for. This is the time. That's what this is for. Go ahead. The witness, who's a nurse who lives in Jackson County, Yes. We had an affidavit filed that she says it's more convenient for her to go to Perry County. That's correct. Ms. Dinkins? Yeah. Yes. The fact remains that there's an Illinois Supreme Court rule that if plaintiff wanted to take her deposition, she's a non-party, correct? She's a non-party. So where would her deposition have to be taken unless she consented to another county? She's a non-party who apparently, Well, answer my question. Well, she's a non-party who's employed by the defendant. So I think that puts her in a slightly different position as far as a current witness. But what you don't want to answer is there's a rule that says it would have to be taken in the county where she resides. Right. Which is Jackson County, right? And then in your brief, you say that the only thing that happened at the hospital was that the decedent passed. Correct. Do you believe proximate cause is an issue that has to be raised in a foreign non-convenience case? No. We're looking at what's the most convenient venue. And our point with respect to where the gentleman passed away is this. Counsel is arguing that the foreign non-convenience analysis and the facts of this case show that Jackson County is a more significant venue because that's the place where the decedent passed away. And our position in this case is that's a factor that's brought into the analysis in determining whether they have a wrongful death claim. And it certainly is a factor in establishing general venue. But as Dottie has said, when we look at doing business, for example, doing business establishes venue. The last act necessary to establish a wrongful death claim, the death of the individual, is very similar to that conceptually. What Dottie has said is if you just look at where somebody is doing business, you have to show more. And our point here is you may be able to establish venue based on the fact that the decedent passed away in Jackson County. But you have to establish more. And that's the point that we were making with that. And I believe that's what counsel's primary thrust is. He's arguing that there's a significant localized interest created in Jackson County because the individual passed away here. Our point is that's just a venue concern. Then when we look at the substance of the allegations of the complaint, which are alleged negligence that took place in Perry County, then that's where the localized interest is manifested. And under the gun law case that we cited, it clearly talks about the venue where the medical acts allegedly occurred. It has the most significant interest in the litigation, the most significant localized interest in the litigation. And we see the gun law case, again, it's a medical malpractice case. But we see the same principles in, for example, the Smith case that we cited, which is an automobile accident case. And there they said, well, when an automobile accident happens within a forum and it perhaps happens on an interstate, the people of that venue have the most interest in policing what happens within their jurisdiction on their highways. The courts have made the same type of analogy with respect to people looking at the medical services that are provided within their jurisdiction and saying they have the most significant interest in policing the medical care that is provided within their county. And so they're... But I want to follow up on what you just said about policing what's going on in their county. As I understand the argument between counsel is the first visit this gentleman had was to Marshall Browning. But the second visit was to Carbondale Memorial. He didn't just show up dead there. There was treatment rendered there. Correct me if I'm wrong. And he was diagnosed there as to the issue that caused his death. Is that true? According to the allegations of the complainant. Yes, according to the allegations of the complainant. But my point is, are you going to admit that the care given in Carbondale was accurate? Or will there be a fight between the parties about what the findings were at Carbondale vis-à-vis the negligence of your client? You see what I'm saying? It seems to me we have a distinct setup on who's going to be right. Well, the allegations of the complaint focus the alleged negligent activities in Perry County. And that would be the focus of the litigation. Now, if they want to bring in someone as a... I think you could make a good analogy to a treating physician. The people that saw the scene at Carbondale Memorial were essentially treating physicians. And they're going to testify like any other treating physician would in the case about what they observed and what their opinions were as far as what they thought the diagnosis were based on what was presented. That's my point. So we now have physicians in Jackson County who are going to be giving medical testimony that may or may not be contrary to your client's medical providing of care. But they're treating... Excuse me, I'm sorry. Go ahead. They're treating physicians, Your Honor. And when I... Again, Carbondale Memorial and none of the physicians and nurses there are parties. There's no allegations of negligence. So we're concentrating on what we're being called upon to defend. When we look at Bland, Illinois Supreme Court says that you do not give undue weight to the fact that a plaintiff's treating physician has an office in or practices in the plaintiff's chosen forum. That's exactly what we have here. We have physicians practicing and working in Carbondale at Carbondale Memorial. The Roberts case that we cited says that physicians seldom testify in person and we can use evidence depositions to cover that. When we're talking about treating physicians, Bland and Roberts say we can take their depositions in this case as treating physicians and the use of or selection of or the fortuitousness of the treating physician does not really impact the foreign nonconvenience analysis. And that's what we're trying to get at. Does it say it doesn't impact it or it's just to be one of the factors weighed? I think it's one of the factors. But I think there's significantly less deference to it because of the ability to take the deposition. And I'm not suggesting that in this case this is what happens because I understand this is difficult. But what we see in some cases, which, again, I'm not saying is here, but in some cases we see a selection of treating physicians in venues to help bolster the foreign nonconvenience argument or the selection of a venue. And so as a whole, generically, the courts have said we don't give great weight to the location of treaters because it would give a party a defense too. It would give you the ability to tweak, as you're talking about experts, it would give you the ability as a party to tweak the venue issue based upon your selection of a treating physician and your selection of an expert. So they said that's given extremely small weight. My concern in this case is you have the negligence allegations at Marshall Browning, but then you have the care that may or may not prove those negligence allegations in Jackson County. So you have negligence, breach, causation, damages, right? The old formula we learned in law school. So the causation and the damages may, that end of the equation may be in Jackson County from what I'm reading in the papers. You know, with this being a medical malpractice accident, they're going to have to focus on the allegations of negligence against the defendants that are in Perry County and the physician that was practicing in Perry County. And where I'm going with that is this. But he lives in St. Louis. That's going to have to happen based on expert testimony. They're going to have to bring in experts from wherever they bring them in to testify about what the standard of care was that was applicable and whether the physician in this case in the hospital reached that standard of care. They're not going to prove that case based on the treating physicians that examined the petitioner. How can you say that at this point? I think that's a fair assumption. I mean, a treating physician could easily say he arrived at my hospital in the ER in Carbondale and they misdiagnosed him. I mean, we don't know what's in the medical records at this point. They would be offering an opinion. The doctor in Carbondale Memorial would say, presumably somebody arrived, this is the condition I observed, this is what I thought they had, and this is the treatment I did. And if they start offering opinions, then they're crossing the line into an opinion witness. What's wrong with that? Again, when we look at the law as to the location and importance of the location of a selected expert witness, the courts have routinely said they're giving very little weight because it's too easy to manipulate. Again, I'm not saying that with respect to Mr. Womack in this case, but as far as the philosophy for why that rule exists, that's why it exists. So they give it little weight. And again, we're looking at essentially the whole analysis that counsel wants to make for this case, is to say, well, the death occurred there, we have some treating physicians there, and a story. But when we look at all the factors as we're supposed to do, and we look at the location of the witnesses that we do know that are in or around Perry County, we have the hospital, the nurse that provided the affidavit, she didn't. She is from Jackson County, but she indicated she lives closer. But more importantly, she said a trial in Murfreesboro, Jackson County, would be inconvenient, and a trial in the county where she works would be more convenient. Why? I don't understand that. Because the hospital controls her schedule? That's it? No, I didn't say that. Or because, I mean, it's obvious the hospital provided the affidavit. She's employed by the hospital. She lives in Jackson County. She lives in the northern part of Jackson County. Right, I saw the map. Yeah. But the reality is she lives in Jackson County. The doctor lives in St. Louis. What is the standard of review that you're up against today? The standard of review that we have is, in all cases, is abuse of discretion. And we believe here that when a trial court enters an order without any explanation, that should be an abuse of discretion per se. I know there are some cases that have said, no, it's not, but it's something that the court can consider. And I will put this to the court to consider. That's why I asked you if you thought remand was necessary. I don't. I think this court has the complete power to do so. And when we look at the Finnell case from the Army Supreme Court, in that case, the trial court looked at roughly six or seven of the four nonconvenience factors. If you say there's six or seven of the four nonconvenience factors, the trial court in Finnell only looked at perhaps four of those. And the Supreme Court said the trial court's failure to consider and weigh all factors is an abuse of discretion. Now, the court did not say we're going to go ahead and remand this back down to the trial court, nor did this court, frankly, when it looked at Finnell as it went on. But my point is the Supreme Court did not send that case back to the trial court and say, go ahead and fill in those last two factors that you didn't look at. The court went ahead and did the balancing test and the analysis, as this court will do here, and said we think this case should be transferred. And that's the inherent power that this court has. Well, in Finnell, the Supreme Court also reminded the trial courts in paragraph 24 to write an order and let the litigants know how the factors were balanced. They did. And in Finnell, they also said trial court statistics are relatively insignificant anymore. But that was also a holding of Finnell. And this court in Decker v. Union Pacific Railroad, which was a case similar to this, did exactly the same thing. It went ahead and weighed the factors rather than remand, even though the order was very similar to this one. We think that the court should, and we would request that the court break this. So that's why I asked you about remand. Yes. We break this. We're here. The arguments are before the court. The court has the power. So you want us to examine the record and look at the factors as the courts before us and above us have done. As the court has done in other cases, absolutely. That's correct. One thing I want to point out is when we look through the factors in this case and we ask where they come down, they continually come down in favor of Perry County. Now, whether they're given lesser weight or medium weight or significant weight, the thing we have to look at is how many of these factors really do come down in favor of Perry County. Location of documents, location of witnesses, location of, we have the congestion factor. This is admittedly a weaker factor in this case, but the potential for a jury view, even though it can be distinguished. Oh, really? Potential for a jury view at a hospital? Well, my point is, yes, it favors Perry County. Admittedly, under these facts, it's a weaker point, but what I'm trying to say is that. What would they view at Marshall Browning at this point in time? We don't know. It's the potential. It's not the probability. It's the possibility. Yeah, possibility. But my point is, regardless of what factor that you look at, even though you've got maybe a quid with it, it still says Perry County. And when we look at what the standard is that Fennell tells us, and we look at the standard that we've applied, the defendant bears the burden of showing that the plaintiff's chosen form is inconvenient to the defendant and the other form is more convenient to all parties. When each of the factors favors Perry County, maybe to varying degrees, we've met our burden. Well, the plaintiff's choice of form has to be given some deference. In this case, we think the choice of form is to be given less deference. Obviously, you always give it deference. But you said every factor favors. And at least one factor we have to consider, even though it may be less, is the plaintiff's choice of form. Well, and right or wrong, what I do, and I may be wrong in making this assumption, but when I talk about the factors, I look at the public interest and the private interest, and then you've got the plaintiff's choice. So I was referring to the public and private. I don't consider the plaintiff's choice, based on the way the case law analysis breaks it down, to be in one of those two categories. It's kind of an independent category of its own, in my opinion. That's why I said that, Your Honor. I wasn't trying to be deceptive. That's why I said that. So if you want to talk about the selection of the venue, then what we have here is we have a plaintiff and decedent that's from Perry County, and we have allegations relating to alleged malpractice in Perry County. So you have less deference afforded to the petitioner or to the plaintiff in this case. So for all these reasons, we're asking this Court to examine this record, to find that it was an abuse of discretion, consider the factors, and transfer this case to Perry County. All right. Thank you, Counsel. Thank you. I'm sorry, Mr. Elbert. He began his career working for me. He denies that. But he did. You know, in the road to the masses, he was blinded and became a defense lawyer. If you believe. Mr. Warnky, would you identify yourself for the record? Oh, I'm sorry. John Warnky. I've never done this before, Judge. It's my first time. John Warnky for the plaintiff. If you believe that viewing the hospital is an important issue in this case, then you should transfer this case to Perry County. But I've been practicing it a long, long time, and that's perhaps the most ridiculous thing I've ever heard anybody ever say. I tried very hard to get the judge to allow me to take the jury to view a scene of an accident in Union County, which I thought was important. He didn't. I've never been involved in a case where we got to view the scene. But I sure as heck haven't been involved in a case, in a malpractice case, where we went and looked at the surgery, unless perhaps there was some issue about the walls causing the problems. That is, that shows the total absence of any validity to this case. If you had to reach that far down, you reached pretty far. In this case, it started out reaching that far down. The first thing that was filed was motion transfer for improper viewing. And then when they realized that was wrong, then they filed a motion for form of nonconvenience. In the form of nonconvenience motion, the first thing they do is file an ad gravid. And they list all these people, including Nurse Jenkins. And golly gee, they didn't get around to telling us where Miss Jenkins lived. So I looked it up, and she lives in Jackson County. Their case was so weak, they began their case by trying to mislead the trial court as to the location of the witnesses. He's talking about treating doctors. All those cases about treating doctors are where there was an effort made after the injury. I mean, you get hurt in Jackson County, you hire an orthopedist in St. Clair. And say, well, okay, the treating doctor is in St. Clair. This has not been the case. But even cases where the treating doctor is in St. Clair, where the offending doctor lives in St. Louis, the cases have remained in St. Clair. I mean, that's just one factor. I agree completely. But this is not a case where I want to. There was no hearing in this case. I agree. And Judge Salverson gave us no guidance. I agree. So do you want this case remanded? I don't want it remanded because we talk about congestion of documents. This case has been pending for two years. We've yet to take a single deposition. I think the evidence is so unbelievably clear that this court initially denied the petition, and I think rightfully so. I don't know why in heaven's name the Supreme Court directed you to reconsider it after it had been properly denied the first time. But I don't care. I believe on remand we would win. I have no objection to remand except for the time period. Two years without a single death being taken. The defense position all the way through has been that it stayed because we filed the motion. No, I've never understood that. I'm sorry? I don't understand staying the discovery because of a forum motion. What's the excuse on that? There isn't any. Anywhere, anyplace, except they don't do it. And then I had to try to force them to, I mean, generally speaking, discovery is we try to resolve those issues. And here I couldn't. Did the court enter a stay in this case? No. If they filed a motion to stay, I objected to that, and that's when they filed the motion where I claimed they admitted that the entry was made on the 20th. Instead of the 24th. So, Nurse Dinkins, you agree that the rules say that unless the hospital voluntarily produced her, she would be deposed in the county where she resides? She has to be, yes. Okay. What about my questions with regard to this causation and damages issue? That's the issue. Could you respond to that, please? The lawsuit says somebody wants a negligence case based on violation of standard of care, causation, and damages. I'll have a brief in there somewhere. Yeah. In this case, it's almost reciprocity, but not quite. But the care, the initial care was in Perry County, in Painted Deerville. Him was negligent, we claim. And then the guy is sent home. Now, we didn't send him. I didn't call and say, would the ambulance please take this guy to Cardinal so he can die there and I can file a suit here. The ambulance, the second time, thank God, if they had taken him the first time, we probably wouldn't have a case. But they take him here the second time. And the second time, and the records say STEMI, S-T-E-M-I, S-T-E-M-I-R-O, infarction. That's not in the Perry County records. The cause of death has to be, I have to prove negligence. But I also have to prove that negligence caused his death. If this man had gone home and died, and I've seen this case, as you have too, it's very hard to prove what caused his death. People can leave the ER room and die later for some of the reasons. It's hard to prove. But causation is the issue in this case. And that's why the cases that talk about venue, don't talk about, he talked about where Perry County does, Marshall Brand does new business in Perry County. The venue issue is not based on doing business there. It's based on the transaction, or some part thereof, occurred in Jackson County. And the element of the case that we, the last element we have to prove in the wrongful death case is his death. And that occurred in Jackson County. There's not, the case on the issue of causation depends on the medical records in Carbondale and depends on the doctor's testimony according to what they saw, what they did, what they found, and then what they said about the cause of death. So do you agree that these people you've just described are merely treating physicians and should be considered that way? I believe they are treating physicians. They are treating physicians that are crucial to the case. We have to prove causation. They are not treating physicians like in all those other cases where they were referred to after the fact. So under, I mean, it's really a matter of labeling under Rule 213, isn't it? If they give opinions, they become independent expert witnesses. We don't even have the word treating physicians under 213. That's true. You're right. So they'll be giving opinions. They will give opinions about their care, about their test, what they saw, what they found on examination, what their diagnosis were, the basis. When they say STEMI, they have to give the basis for that diagnosis. And we have to prove that more likely than not those same conditions existed in Perry and were missed, that the doctor didn't see them. Was Marshall Browning a municipal hospital at one time? No. So we don't have any municipal issues here. No. What we have here is a defendant who really, really, really, really, really, really believed that the case should be tried in the county where the hospital exists. But the case law doesn't support that. When the defense says all the factors favor Marshall Browning, they do not. The access of evidence is the same in both counties. Compulsory service is the same in both counties. Willingness of people to appear and the cost of that. Probably the benefit goes to Jackson County. But all the private factors that we talked about. I think the one I find interesting is the congestion of cases. Some defense lawyers some place a year or so from now will say, golly gee, it takes all the length of time to get a case to court in Jackson County. It took two years, we still don't have a definite case. It's congestion, but not because of Jackson County. The records show Jackson County got rid of it. I showed those figures in the brief. They had so many cases that were filed and they resolved more cases at the end of the year in question than they did. Of course a case like this that's delayed two years by a form motion goes into the statistics. Yeah. So cases in larger counties that have formed on convenience motions,  No, because Jackson doesn't have, nobody considers Jackson a quote unquote hell hole. Jackson is not a place for people to go to. You don't see people from St. Clair coming down to Jackson to file their lawsuits. Maybe Marion now, but not Jackson. But it does, these types of things do affect the statistics. And this is an extreme example. I couldn't get anything done and finally had to file, I filed a motion for default. So I couldn't get anything. They wouldn't even file answers to the pleads. So it does affect it. The private factors do not favor. Isn't rule 187 timed 90 days after the response of pleading is filed? Performed on convenience? I mean they don't have to file it first thing out. They file it on time. No, but I'm saying the rule doesn't say you don't answer. No, but they didn't answer and I filed a motion for default because they didn't answer. There's no doubt in my mind it was a conceded, a concentrated effort to delay the case and they've been very successful at it. And I don't understand that. If I take a deposition of Nurse Dinkins now as opposed to a year from now, the county, one of the cases, if any, would have no effect on it. It would be any decisions made, but if it were an important decision the judge should make, perhaps there would be a good reason for staying. But the discovery shouldn't be staying. Well, just for the purpose of the argument here, I was referring to rule 187A that says a motion to dismiss or transfer under the form of nonconvenience must be filed by a party not later than 90 days after the last day allowed for the filing of that party's answer. So it contemplates in the rule that there would be some responsive pleading filed, at least as an outside time limit. It does. But they filed this right out of the box is what you're saying. They filed a motion for venue first. Venue, right. Then they filed a motion for transfer second. Right. And they never filed, to this day I don't think they've filed an answer or other pleadings except this motion. But when you consider the private factors, they do not favor Perry County. When you consider the public factors, the Brayfield case says that the county where the person dies has just as much interest, has interest in the case. There's no question that Perry County has interest in the case. So does Jackson. The death occurred there. We have proof of the cause occurred based on what happened there. And the county, Brayfield says the county has Jackson, and Brayfield is Cook, has as much interest in resolving the issue as does the, in that case it was Kankakee. We didn't talk about jurisdiction. Rule 362 says the petition has to be filed 30 days after entry of the order, and there's not a single case out there anywhere that says anything to the contrary. And the facts are abundantly clear here, including admission by the defense, that the entry occurred on April 20th, not the 24th. And that the, and the petition was filed May 24th, more than 30 days later. The cases cited by the defendants all refer to Supreme Court Rule 272, which is a final order. The language of Rule 272 says, uses the word filed, 306 uses the word entry. It appears to this untrained eye that perhaps 34 days is longer than 30 days, and I don't think this court has jurisdiction. The case out there that addresses this issue are confusing as heck. The only case that really came close to addressing it, Supreme Court, was that the, the Boos case. Started out in St. Clair County. The judge, the defense lawyer didn't get the order. The judge made a subsequent change. The appellate court approached the Supreme Court and set it back. Then went back to the Supreme Court again, and they didn't even address the issue of jurisdiction. But the Supreme Court rule is very, very clear. It ought to be, in my humble opinion, one or the other. It should always be entry or it would be filed. But I didn't write the rule. The rule says entry, and it was not. The docket sheet says 420, court reviews file, defendant motion to transfer venues denied, file order entered, plaintiff motion for sanction is denied, court to forward a copy of orders via e-mail, and that's all entered on the 20th of April. And for whatever reason, there was a file mark. There was a file stamped on the 24th. So I think the issue of jurisdiction, which you have to draw on by going first, shows that this court doesn't have jurisdiction. And unless you have any more questions, I'll sit down and share them. Thank you, counsel. We're both. Thank you. Could you address the issue of jurisdiction, since we didn't have it addressed that night? Sure. Jurisdiction was raised by opposing counsel in their motion to dismiss the 306. Before this court, it was denied. It was raised before the only Supreme Court in response to our petition for legal appeal. It was denied, and now it's been raised again. Did the Supreme Court formally deny the 306 by order, or did you just ask us to consider the case? I was saying that the Supreme Court denied their motion to dismiss our 315. As to your specific question, they entered a dual order where they denied the Rule 315, and then in the exercise of their supervisory authority, they asked the court to vacate its prior ruling and accept the case. Right. So there are two orders. Right, but I didn't see where they specifically said there's jurisdiction. I didn't see where the Supreme Court specifically considered the issue of jurisdiction. They didn't put it in that order. It was a separate order that was issued, and we're happy to supplement with that. I thought we had that in our brief. I thought we had it in our reply brief, the copy of the Supreme Court's order where they denied the motion to dismiss based on lack of jurisdiction. Okay. We're happy to provide that. No, if it's in the record, it's in the record. Your Honors, the Granite City case, the Perez case, the Freeport case, the Dickerson case all put this issue to rest. Granite City says we go to the file stamp date of the written order here. That was April 24th. Perez says the court rejected specifically the notion that a judge entering an order that the order is entered and considered filed at the moment it's signed. Freeport says the same thing. Dickerson looks to the official docket entry as the controlling date. That's 4-24. All of those together show that the petition was timely, that we filed it within 30 days. It's the 24th, which is the date that the clerk filed it. It was file stamped and made the notations as of record, and that's the date that the clerk sent the opinion or the order out to counsel. The Mitchell v. Adolis case that counsel cites, we walk through that in quite a bit of detail in our reply brief, and we show how that actually supports us because the court was clearly looking in that case at the date of the file stamp. I think that puts that issue to rest. The one remark I'd like to make with respect to the form that convenes is we do have a significant difference with counsel. Again, looking at the private and public interest factors, we think those strongly favor transfer to Perry. And when we walk down those, we see the answer to which of the two counties is favored for the particular factor. The answer is Perry County, Perry County, Perry County. Now, you might be able to look and say, well, we give that less weight, we give that less weight. But the bottom line is they all still favor Perry County. And when we look at the Gunlock case, the Washington Illinois Power case from the Illinois Supreme Court, we talk about the localized public interest and what a significant part of the analysis that is. We think in this case that the most significant relationship and interest in this litigation is in Perry County where the alleged acts took place. And again, he goes back to residents of that county or any county where there's a hospital or medical provider when there's allegations of negligence against that provider or doctor, they've got the most significant localized interest in providing a forum, providing jurors for that dispute, and the cases are leading as to how we look at that factor. And that is given great weight. And we ask that you do that in this case as well. And finally, I know you can look at some of these factors and say, well, that's just one factor. But again, we always say that after we acknowledge what we say, Perry County. Perry County. But that's just one factor. The factors show that Perry County has the most significant relationship with this litigation. And that's why we're asking you to transfer it. Thank you. Thank you, Counsel. I appreciate your arguments. So we'll take this matter under advisement under decision of enforcement.